UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY HALL,

    Plaintiff,

v.

BLAKE NAVARRE and
TIMOTHY BARR,

    Defendants.

Case No. 21-12970
Honorable Laurie J. Michelson

**OPINION AND ORDER DENYING
BARR'S MOTION FOR RECONSIDERATION [63]**

In August 2020, Timothy Hall was protesting in downtown Detroit when Detroit police officers ordered the protestors to disperse because they were blocking Woodward Avenue, a major city street. After repeating orders to disperse over the loudspeakers, police officers formed a line, moved toward protestors on Woodward, and detained them. The officers also used tear gas. At this time, Hall was standing on the sidewalk when Officer Blake Navarre ran toward him and tackled him to the ground. Hall was zip-tied and dragged to the curb. Eventually, Officer Timothy Barr issued Hall a citation for disorderly conduct, disobeying a lawful order from a police officer, and obstructing a moving lane of traffic. These charges were ultimately dismissed.

The Court recently granted in part three Defendants' motion for summary judgment. *See Hall v. Navarre*, No. 21-12970, 2023 WL 4424245 (E.D. Mich. July 10, 2023), *available at* (ECF No. 62). All claims against Navarre, who did not move for

summary judgment, as well as a First Amendment retaliation claim against Barr, survived for trial. Barr now seeks reconsideration of this Court's decision.

## I.

Barr purports to bring this motion in order to correct legal and factual mistakes the Court made in its prior opinion analyzing the First Amendment retaliation claim against him. To do so successfully, he must show that "the mistake was based on the record and law before the court at the time of its prior decision." E.D. Mich. LR 7.1(h)(2)(A).

Before the Court turns to the merits of Barr's arguments, a word on that standard. Defendants' motion for summary judgment dedicated all of two paragraphs to the causation element of Hall's First Amendment retaliation claim. (ECF No. 51-1, PageID.678–680.) Not a single case citation can be found in those two paragraphs. (*See id.*) In fact, when addressing the retaliation claim as a whole, Defendants cited one case, seemingly only for the elements of the claim. (*Id.* at PageID.677, n.84.) Notably, Defendants did not even cite *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019), a seminal First Amendment retaliation case. And Defendants did not mention retaliation at all in reply. (*See* ECF No. 59.) To come back now and quibble with the Court's analysis after failing to take the opportunity to do their own is not a proper use of a motion for reconsideration. A motion for reconsideration is not a second bite at the apple. *See Collins v. Nat'l Gen. Ins. Co.*, 834 F. Supp. 2d 632, 641 (E.D. Mich. 2011).

## A. Good-Faith Exception

Now to the merits.

Barr now presents two cases that he claims contradicts this Court's opinion, which stated in part:

> the Court declines to apply the good-faith limitation—which provided Barr with qualified immunity in the Fourth Amendment context—to the retaliation claim against Barr.
>
> For one, there is no clear authority for doing so. Defendants have not identified a case that applies this variation of qualified immunity to First Amendment retaliation claims. Indeed, though Defendants mention the good-faith rule in passing when discussing the retaliation claim, they cite no authority for applying this doctrine to a First Amendment claim. (ECF No. 51-1, PageID.678 ("[W]hatever adverse action(s) taken against Plaintiff by Officer Cowan and Sgt. Barr, were inconsequential and, again as previously stated, premised upon each of their good-faith reliance on information provided to them by other officers[.]").) Given the breadth of protection afforded to officers by the good-faith exception to the collective-knowledge doctrine, the Court will not expand its application to a retaliation claim without further support or analysis from the parties.

*Hall,* 2023 WL 4424245, at *12.

As an initial matter, the above reason was just one of several the Court provided for declining to apply the good-faith limitation to a First Amendment retaliation claim. Importantly, the motion for reconsideration does not attempt to distinguish or address the Court's reasoning based on *Novak v. City of Parma*, 932 F.3d 421, 429 (6th Cir. 2019), which contemplated a situation where evidence of retaliatory animus would be weighed against "a mistaken but honest belief that there was probable cause." There, the Sixth Circuit goes on to state that "[i]f the officers did have probable cause, on the other hand, they are entitled to qualified immunity."

3

*Id.* If a mistaken belief in probable cause was enough to grant qualified immunity, presumably the Sixth Circuit would not contrast that situation to another where qualified immunity applies. So even if the Court were to agree with Barr that there was some authority to support applying the good-faith limitation in like circumstances, the Court's conclusion would remain unchanged given Sixth Circuit case law in the area. And that is reason enough to deny the motion for reconsideration. *See* E.D. Mich. LR 7.1(h)(2)(A) ("The court made a mistake [and] correcting the mistake *changes the outcome of the prior decision*[.]" (emphasis added)).

However, the Court does not agree with Barr that the cases he now cites move the ball in his favor. Start with *Newbill*. Similar to this Court, the *Newbill* court employed a two-step framework of first, finding that "Plaintiff has adduced sufficient circumstantial evidence of retaliatory motive; thus, the burden shifts to Defendants to show that [they] would have taken the same action in the absence of the protected activity." *Newbill v. Neville*, No. 1:16-cv-00527, 2018 WL 4656273, at *10 (S.D. Ohio Sept. 27, 2018). But it then goes on to conclude that two defendants were entitled to qualified immunity on the retaliatory-arrest claim because "Plaintiff has offered no evidence that they were retaliating against Plaintiff for her speech. Instead, the evidence supports that they were acting on information and orders originating from Defendant Neville, which led them to believe that Plaintiff had violated Ohio's disorderly conduct statute." *Id.*

It is here this Court and the *Newbill* court differ. While in *Newbill*, the court concluded that the evidence unequivocally showed that two officers were merely

4

acting on information and orders originating from another officer, this Court found that Hall *did* adduce evidence of retaliatory animus that refuted the inference that Barr was merely relying on orders to issue the citation. *See Hall v. Navarre*, 2023 WL 4424245, at *14 ("Hall has shown some evidence that his participation in the protest was a motivating factor behind Barr issuing him the citation."). Specifically, Barr testified that he witnessed the protestors as a group acting in a way he deemed unlawful, that he believed Hall was part of that group "because he was taken into custody by a member of the Detroit Police Department," and that he believed the assembly to be unlawful because "[t]hey were all advised to leave the area." (ECF No. 51-15, PageID.1018–1019.) A reasonable jury could infer from that testimony that it was Hall's participation in the protest and his presence at the scene—rather than any individual act he took—that was the but-for reason he was issued a citation. Indeed, a key part missing in Barr's testimony is the conclusion that Hall specifically committed the infractions he was cited for, as opposed to being part of a group where some members were committing certain infractions. But because there was also evidence that Barr was perhaps just following orders when issuing Hall a citation, the Court left it to a jury to determine whether the retaliatory animus was the but-for cause of issuing the citation. *Id.* ("The jury must ultimately weigh this competing evidence and decide whether retaliatory animus is the but-for cause. Indeed, in *Novak*, the Sixth Circuit contemplated a similar situation where a plaintiff would have evidence of retaliatory animus and the officer would have evidence that he mistakenly believed he had probable cause to take the disputed action.").

Thus, *Newbill* does not change this Court's opinion. The factual differences between *Newbill* and this case explain why the conclusion on qualified immunity differed. Notably, *Newbill* is not a case where the two defendants who were granted qualified immunity testified that they issued a citation in part because "all of the circumstances with [them] being there." (ECF No. 51-15, PageID.1026 ("Q. And so you had to kind of leap to the conclusion that he was part of the assembly, and a part of making noise, and a part of loitering in order to write those tickets? A. I believe I had probable cause with all of the circumstances with me being there.").) And in *Newbill*, there was a clear causal chain between one officer's orders and the plaintiff's arrest and citation, which is missing here as well. *Newbill*, 2018 WL 4656273, at *5 ("To recap: Defendant Neville ordered the arrest, Defendant George made the arrest, and Defendant White transported Defendant after the arrest. Defendant George relied in part on information originating from Defendant Neville, and Defendant White relied in part on information from Defendant George."). Barr did not testify that he received any information other than that Hall was someone who should be cited.

Perhaps conceding the Court's point on the lack of authority, Barr next attempts to argue that the "collective-knowledge doctrine extends beyond the Fourth Amendment and into First Amendment contexts . . . by implication[.]" (ECF No. 63, PageID.1792.) As the Court explained in its opinion, it requires more than "implication" to extend this variation of qualified immunity into a new context. And despite stating that the implied application "occurs regularly," Barr offers only one

6

case in support of this point—a case that was not cited in his original motion. (*Id.* at PageID.1792 (citing *Brandt v. City of Westminster*, 300 F. Supp. 3d 1259, 1273–74 (D. Colo. 2018)).

For the same reasons *Newbill* failed to persuade the Court, Barr's reliance on *Brandt* also fails. There, the court granted the individual officers qualified immunity based on the fellow-officer rule, but specifically found that the plaintiff "could not prove . . . that Esslinger or Rush were retaliating against him for his speech, or otherwise violated his rights simply by responding to the dispatch call and making initial contact with him. . . . The record establishes . . . that when Officer Rush completed and served the citation on Brandt, he did so *exclusively* in reliance on Officer Carnes' offsite determination that probable cause existed to cite Brandt for disorderly conduct[.]" *Brandt*, 300 F. Supp. 3d at 1273–74 (emphasis added). Once again, the Court allowed the claim against Barr to survive because there was evidence that Barr had retaliatory animus against Hall based on his participation in the protest, and thus the Court could not conclude that Barr issued the citation "exclusively in reliance" on someone else's probable-cause determination. So *Brandt* does not lead the Court to a different conclusion.

Barr next takes issue with the Court's interpretation of *Johnson v. County of San Bernadino*. He states, "Johnson stands for the simple proposition that retaliatory animus cannot be premised upon the collective-knowledge doctrine." (ECF No. 63, PageID.1793.) The Court agrees. *See Hall*, 2023 WL 4424245, at *13 ("In other words, retaliatory animus should not be determined based on officers' collective psyche.").

Thus, as the good-faith limitation is an interpretation of the collective-knowledge doctrine, it follows that it should also not foreclose a First Amendment retaliation claim.

Barr's last legal challenge in his motion for reconsideration conflates the good-faith limitation with the existence of probable cause. He argues, "If the officers did have probable cause they are entitled to qualified immunity because '[t]his Court has never recognized a First Amendment right to be free from a retaliatory arrest that is supported by probable cause.' This conclusion brings the conversation full circle with Plaintiff failing to satisfy the first (and as discussed below, second) preconditions to prevail on his Retaliation claim against SGT. BARR." (ECF No. 63, PageID.1796 (citations omitted).)

But the question of whether the good-faith limitation applies is wholly distinct from whether there was probable cause. In other words, even though the good-faith limitation applies in the absence of probable cause, it does not change the fact that there was not probable cause. *See Bey v. Falk*, 946 F.3d 304, 317 (6th Cir. 2019) ("But what do we make of the fact that the collective knowledge here did not amount to reasonable suspicion? In such circumstances, the Supreme Court has recognized the availability of a good faith defense for an officer who relies on the *erroneous* collective knowledge of others to make a stop." (emphasis added)); *see also Fleming v. Scruggs*, 465 F. Supp. 3d 720, 738 (E.D. Mich. 2020) (concluding that plaintiff's Fourth Amendment rights were violated because officers acted without reasonable suspicion but granting qualified immunity based on their erroneous but good faith reliance on

8

a bulletin). And in its opinion, the Court specifically found that there was a fact issue on probable cause, but that the good-faith exception applied to a reasonable officer in Barr's shoes under the Fourth Amendment. *Hall*, 2023 WL 4424245, at *10 ("In sum, the Court concludes that there is a fact issue as to whether there was probable cause to cite Hall for disobeying a lawful order of police and for disorderly conduct. But there is no evidence to support a finding of probable cause for the moving-lane violation. Despite these fact issues, Barr is still entitled to qualified immunity under current Sixth Circuit case law."). Indeed, the separation of the two issues goes to the two elements of qualified immunity—a constitutional violation and a violation of a clearly-established right. *See Bey*, 946 F.3d at 312. So Barr's attempt to conflate the two also does not change the Court's opinion on the First Amendment claim.

In sum, Barr's legal challenges do not persuade the Court that it erred in its prior opinion.

### B. Factual Challenges

Barr also argues that the Court erred in finding a fact issue as to whether retaliatory animus was the but-for cause of Barr issuing the citation.

First, Barr argues that when he issued the citation, he did not know Hall was the individual he had seen zip-tied earlier on the curb waiting for medical assistance. (ECF No. 63, PageID.1799.) Fair enough. However, if this is Barr's position, it does call into question why he previously argued that "Although Sgt. Barr did not witness the specific conduct that lead to Plaintiff's arrest by Officer Navarre, his observation of Plaintiff after he[']d been arrested, while wearing 'tactical' attire, well after the

9

dispersal orders had been given, gave him no reason to doubt the veracity of the charges he was instructed to write in the citation that was ultimately issued to Plaintiff." (ECF No. 51-1, PageID.679.) It now appears that Barr had no idea what Hall was wearing during the protest or what he looked like after he was arrested. So, if anything, Barr's new argument undermines the factual basis in support of Barr's argument for probable cause, which of course would put more weight on his testimony that Hall "was in a group" that committed the cited infractions. (ECF No. 51-15, PageID.1018.) And though Barr does not clearly say that he issued the citation because Hall was in a group that was acting unlawfully, he does state that "I believe I had probable cause with all of the circumstances with me being there." (*Id.* at PageID.1026.) Given that Barr did not see Hall when he was at the protest, it is a fair inference that Barr believed Hall should be cited because he was at the protest and he believed the protestors in general had been acting unlawfully.

But Barr also takes issue with the Court's characterization of that testimony. He accuses the court of omitting "qualifying language from Sgt. Barr" in its opinion. (ECF No. 63, PageID.1798.)

The Court clarifies that it took Barr's answers to two consecutive questions and cited them as one answer, indicating it was doing so with ellipsis. *See Hall*, 2023 WL 4424245, at *14 ("Q. Did you ever witness Timothy Hall disobey a lawful order of a police officer? A. Timothy Hall specifically, no. But as a group, yes. . . . [H]e was in a group that did . . . . He had zip ties on, which would lead me to believe he was at the scene[.]"). For the reader's clarity, the Court reproduces the full exchange here:

10

Q. Did you ever witness Timothy Hall disobey a lawful order of a police officer?

A. Timothy Hall specifically, no. But as a group, yes.

Q. And did you ever observe or witness Timothy Hall blocking, blockage moving lane of traffic?

A. No. But again, he was in a group that did.

Q. Okay. And in terms of yourself, how would you know that Timothy Hall was in a group that was either disorderly conduct, disobeyed a police officer's orders, or was blockading traffic?

A. Well, because he was taken into custody by a member of the Detroit Police Department. He had zip ties on, which would lead me to believe that he was at the scene.

Q. And is just as, just being at the scene enough to warrant issuing citations and arrests for disorderly conduct, disobeying a police officer's command, and/or blockading traffic?

A. Yes. Well, several orders were given out over the loud speakers for everyone to disseminate and leave the area. They were advised that it was an unlawful assembly, okay, and that if they did not leave, they would be placed under arrest. They gave them several verbal warnings over the loud speaker system, to which most of the people just screamed back that they weren't going anywhere. They were given several minutes to leave, multiple chances to leave, and still were given opportunity to leave after the mobile field force began to walk their way.

Q. And again, you're referring to, when you are indicating that – you're referring to the group, not necessarily each individual?

A. Right. The group as a whole.

(ECF No. 51-15, PageID.1018.)

But it is still unclear how the full exchange alters the conclusion. Barr states that "SGT. BARR'S response was not merely addressing Plaintiff's participation amongst a group of protestors, but rather proceeding under the presumption that the

11

group whom Plaintiff was participating with was acting unlawfully based upon the terminology of the question itself." (ECF No. 63, PageID.1799.) But even if the question asked Barr to presume the group was acting unlawfully, Barr's answer still shows that he believed Hall acted unlawfully because he was part of a group that acted unlawfully. And that was the Court's point—it is not sufficient to be associated with individuals who acted unlawfully. That very notion implicates the First Amendment. Barr's testimony appeared to use facts (which now Barr states were not in his knowledge at the time he issued the citation) to assume that Hall was a protestor or at least at the scene of the protest. In other words, the question's assumption that the group was acting unlawfully does not change the meaning of Barr's answer: he had no factual basis for concluding that Hall, as an individual, acted unlawfully when he issued the citation. And in response to whether he had seen Hall commit certain infractions, Barr testified twice that he witnessed these infractions committed "as a group." (ECF No. 51-15, PageID.1018.) He also stated he believed he "had probable cause with all of the circumstances with me being there," which evidences a basis for issuing the ticket that is distinct from relying on another officer's order. (ECF No. 51-15, PageID.1026.) Once again, this suggests that Barr issued the ticket because he thought that Hall was at the protest and in a group that he believed to be unlawfully gathered, and he issued him a ticket on that basis.

And as the Court recognized, Barr can tell a different story with this evidence—that Barr assumed Hall had acted unlawfully because he was ordered to issue him a citation or that another officer had seen him act unlawfully, which is why

12

he issued the ticket. But Hall is also able to show that Barr may have issued that ticket simply because he assumed Hall was at the protest, which is not a crime in and of itself. And that would make the protected activity the but-for cause of Barr's issuance of the ticket. Given the overlapping nature of the protected activity and the basis for probable cause, it is not up to the Court to decide what ultimately motivated Barr. Whereas here evidence exists such that a reasonable jury could find Barr was motived by retaliatory animus, this fact issue is for a jury to decide. *See Hall*, 2023 WL 4424245, at *14 ("At this stage, the Court cannot say that every reasonable jury would believe Defendants' theory—that Barr honestly believed he had probable cause either from the arresting officer or because he was ordered to issue the citations—over Hall's theory—that Barr was primarily motivated to issue the citation because of Hall's apparent association with the protest.").

## II.

In sum, the motion for reconsideration (ECF No. 63) is DENIED.

SO ORDERED.

Dated: July 26, 2023

                                             s/Laurie J. Michelson
                                             LAURIE J. MICHELSON
                                             UNITED STATES DISTRICT JUDGE